UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PLASTECH HOLDING
CORPORATION,

          Plaintiff,

                                   Case No. 14-cv-14049

v.

                                   HON. MARK A. GOLDSMITH

WM GREENTECH AUTOMOTIVE
CORPORATION, et al.,

          Defendants.
_____/

## OPINION AND ORDER
## DENYING DEFENDANT JAC MOTORS' MOTION TO DISMISS COUNT IV OF THE
## SECOND AMENDED COMPLAINT (Dkt. 43)

### I. INTRODUCTION

This matter is before the Court on Defendant JAC Motors' motion to dismiss count IV of the second amended complaint (Dkt. 43). Defendant seeks a ruling that, as a matter of law, it did not breach any fiduciary duty, because there was no fiduciary relationship between it and Plaintiff. As explained fully below, the Court denies the motion to dismiss, because Plaintiff has pleaded sufficient factual allegations that plausibly state a claim for breach of fiduciary duty.

### II. BACKGROUND

Plaintiff Plastech Holding Corporation ("PHC"), a corporation that imports, distributes, and develops products for motor vehicles, and Defendant JAC Motors ("JAC"),[1] a Chinese original equipment manufacturer of automobiles, began working together in 2009 to assist JAC in readying passenger vehicles for distribution and sale in the United States. Second Am.

---

[1] JAC Motors is also known as Anhui Jianghuai Automotive Co., Ltd., but will be referenced as JAC for purposes of this opinion and order. See Second Am. Compl. ¶ 15 (Dkt. 35); Def. Mot. at 1 (Dkt. 43)

Compl. ¶¶ 20-21, 25 (Dkt. 35).  At that time, JAC's vehicles were not engineered to meet various safety and emissions standards of the United States.  Id. ¶ 26.  During several discussions, PHC explained to JAC that, in order to successfully sell vehicles in the United States, JAC must meet both the federally mandated safety and quality standards.  Id. ¶ 27.  PHC indicated that it would be willing to assist JAC in satisfying these standards, provided JAC agreed to the following: (i) PHC would act as the exclusive distributor for these vehicles in the United States; and (ii) JAC would promise not to abandon the venture and, in fact, make the vehicles available to PHC. Id. ¶ 28.

In 2010, the parties executed a Framework Agreement (Dkt. 35-1) in Dearborn, Michigan, with an effective date of October 27, 2010.  Second Am. Compl. ¶ 29.[2]  According to the Framework Agreement, PHC had the right to distribute passenger vehicles manufactured by JAC in the United States.  Id. ¶ 30.  JAC also agreed not to sell its vehicles directly to consumers in the United States through any channel other than PHC.  Id. ¶ 31.

Based on their business relationship dating back to 2009, PHC invested millions of dollars assisting JAC in engineering, homologation, and other activities, with the anticipation that PHC would distribute JAC's vehicles in the United States.  Id. ¶ 34.  In particular, PHC provided JAC with "extensive market intelligence, including competitive data, product performance requirements, content, pricing, advertising, consumer response and feedback, and a host of other relevant data."  Id. ¶ 39.

Beginning in June 2011, and continuing into 2012, JAC sought additional technical and other assistance from PHC, separate and apart from PHC's duties set forth in the Framework

---

[2] The parties also executed a supplementary agreement (Dkt. 35-2), dated January 18, 2011, which set forth additional understandings of the parties' forthcoming work relating to the homologation of JAC's automobiles.  See Second Am. Compl. ¶ 29.

Agreement. Id. ¶ 43. Specifically, JAC asked PHC to develop a design studio to provide design and styling suggestions on current and next generation vehicles, assist in improving engines and transmissions, and help develop and evaluate JAC's supply base. Id. ¶ 44. PHC retained and paid an engine design firm, which identified, designed, and engineered various improvements for JAC. Id. ¶¶ 46-47. PHC spent an additional $1.6 million in assisting JAC with these extra-contractual tasks, unrelated to the parties' Framework Agreement. Id. ¶ 48. JAC assured PHC that these funds would be repaid, but JAC has failed to honor its agreement to pay these unrelated funds. Id. ¶¶ 49-50.

PHC alleges that Defendants WM Industries Corporation, GreenTech Automotive Corporation, and GreenTech Automotive, Inc. (collectively "GreenTech") subsequently entered into an agreement with JAC for the distribution of electric vehicles, knowing that PHC had an exclusive distribution agreement with JAC. Id. ¶¶ 54-59. PHC further claims that, because of JAC's agreement with GreenTech, resources have been diverted away from PHC's venture, and JAC has failed to manufacture and provide PHC with passenger vehicles for sale in the United States. Id. ¶¶ 66-67.

As a result, PHC asserts the following counts against JAC in its second amended complaint: (i) anticipatory breach of contract; (ii) breach of contract; (iii) breach of an oral and/or written agreement to repay funds; (iv) breach of fiduciary duty; (v) fraud in the inducement/innocent misrepresentation/fraudulent misrepresentation; (vi) fraud in the inducement/constructive fraud/innocent misrepresentation relating to the extra-contractual payments; and (vii) civil conspiracy. PHC also alleges that GreenTech's conduct with JAC constitutes tortious interference, civil conspiracy, unjust enrichment, and the aiding and abetting of JAC's breach of fiduciary duty.

It is count IV of the second amended complaint against JAC — breach of fiduciary duty — that is the subject of the present motion to dismiss.

### III.  ANALYSIS

Under Federal Rule of Civil Procedure 12(b)(6), "[c]ourts must construe the complaint in the light most favorable to plaintiff, accept all well-pled factual allegations as true, and determine whether the complaint states a plausible claim for relief." Albrecht v. Treon, 617 F.3d 890, 893 (6th Cir. 2010).   To survive a motion to dismiss, a complaint must plead specific factual allegations, and not just legal conclusions, in support of each claim. Ashcroft v. Iqbal, 556 U.S. 662, 678-679 (2009).   A complaint will be dismissed unless it states a "plausible claim for relief." Id. at 679; Bell Atlantic Corp. v. Twombly, 550 US 544, 570 (2007) (same).

Although the Supreme Court did not comprehensively define the concept of plausibility in Iqbal and Twombly, it did provide certain guideposts from which the contours of that concept can be discerned.  It required that the pleading contain sufficient factual allegations to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  It also stated that a court must use "its judicial experience and common sense" with reference to the specific context of the case to determine whether the viability of the claim was more than possible, without demanding that it be probable. Id. at 678-679.  Thus, the focus at the pleading stage is whether there are sufficient factual allegations to supply more than a modicum of assurance that the claim is worthy of pursuit in a judicial forum.  With the Iqbal/Twombly development in the law, courts must now examine whether there is some ring of truth to what a plaintiff alleges.

At this stage of the litigation — when discovery may have only barely begun, if at all — a plaintiff should not be required to spell out, in great detail, all the facts he or she would have to

4

prove at trial.  <u>Armstrong v. Shirvell</u>, 596 F. App'x 433, 444 (6th Cir. 2015) ("While the plaintiff must give sufficient facts to support his claim, he need not provide every fact that may be raised at trial.").  Instead, a plaintiff's obligation is to plead sufficient factual allegations that make it reasonable to conclude that there may be other facts that discovery would uncover.  <u>See</u> <u>Twombly</u>, 550 U.S. at 556 (plausibility "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the claim).  This is especially true when dealing with relationships for which there are no bright-line requirements and ultimate legal conclusions may well depend on exploring a complex history of interactions.  <u>See, e.g.</u>, <u>In re</u> <u>WellPoint, Inc. Out-of-Network UCR Rates Litigation</u>, 865 F. Supp. 2d 1002, 1026 (C.D. Cal. 2011) (holding that the plaintiffs' factual allegations sufficiently alleged the existence of a plausible conspiracy among the defendants, because "it is reasonable to expect that discovery will uncover specific answers to Plaintiffs' fact-based allegations," and <u>Twombly</u> does not require "concrete answers . . . at the pleadings stage").  With this perspective, the Court now addresses the issue whether PHC has pleaded specific factual allegations that plausibly state a claim for breach of fiduciary duty.

"Under Michigan law, a fiduciary relationship arises from the reposing of faith, confidence, and trust and the reliance of one upon the judgment and advice of another." <u>Petroleum Enhancer, LLC v. Woodward</u>, 690 F.3d 757, 765 (6th Cir. 2012).  The existence of such a relationship places a duty on the fiduciary "to act for the benefit of the principal regarding matters within the scope of the relationship."  <u>Id.</u> at 766.

A fiduciary relationship may arise in one of the following situations:

> (1) when one person places trust in the faithful integrity of another, who as a result gains superiority or influence over the first, (2) when one person assumes control and responsibility over another,

5

>  [or] (3) when one person has a duty to act for or give advice to
>  another on matters falling within the scope of the relationship.

Mike Vaughan Custom Sports, Inc. v. Piku, 15 F. Supp. 3d 735, 753 (E.D. Mich. 2014).  Courts

have traditionally recognized the following as fiduciary relationships: trustees to beneficiaries,

guardians to wards, attorneys to clients, and doctors to patients.  See, e.g., Ford Motor Co. v.

Ghreiwati Auto, 945 F. Supp. 2d 851, 865 (E.D. Mich. 2013).

When a particular relationship falls outside of these well-defined examples, determining

whether it amounts to a fiduciary relationship is a question of fact.  Id.  Because there is no rule

in the Sixth Circuit that a particular relationship could never impose fiduciary obligations, the

Court must look to the actual relationship that existed between the parties.  Fremont

Reorganizing Corp. v. Duke, 811 F. Supp. 2d 1323, 1345 (E.D. Mich. 2011); see also Muglia v.

Kaumagraph Corp., 64 F.3d 663 (6th Cir. 1995) (table) ("Except for certain per se fiduciary

relationships . . . fiduciary relationships arise from the facts and circumstances surrounding the

relationship between the parties.").  Because "the inquiry as to whether a fiduciary relationship

exists is fact-specific, a claim alleging the existence and breach of fiduciary duties is generally

not subject to dismissal under Rule 12(b)(6)."  Ajuba Int'l, L.L.C. v. Saharia, 871 F. Supp. 2d

671, 688 (E.D. Mich. 2012).  This is because a finding that a fiduciary relationship existed

between the parties often "requires an examination into a fully developed record beyond simply

the language of the parties' agreement."  McGregor v. Hunting Specialized Coating, Inc., No.

04-73547, 2005 WL 1345676, at *3 (E.D. Mich. June 3, 2005) (emphasis added).

It is JAC's contention that the only relationship that existed between it and PHC was

simply that of manufacturer and distributor.  Def. Br. at 4 (Dkt. 43).[3]  JAC argues that the

---

[3] Although JAC labels its relationship as "buyer-seller," it does so by direct reference to another
manufacturer-distributor case, Sudamax Industria E Comercio De Cigaros, Ltda v. Buttes &

parties' contractual agreement and, in particular, its pricing provisions evidence that the parties were acting in their own best interests.  Id. at 7.  According to JAC, its primary interest was to maximize its profits from its sales of passenger vehicles to PHC, which conflicts, to a degree, with PHC's primary interest of purchasing the vehicles for a low price in order to maximize its profit margins.  Id.  JAC also argues that, absent a confidential relationship, the alleged breaches do not constitute breaches of fiduciary duties.  Id. at 7-8.  Rather, the complaint alleges, at most, breaches of the agreement between the parties.  Id. at 8.  The Court disagrees.

It is true that a traditional relationship between a manufacturer and its distributor, without more, has often been found not to be a fiduciary one.  See, e.g., Aerospace Am., Inc. v. Abatement Techs., Inc., 738 F. Supp. 1061, 1071 (E.D. Mich. 1990) (rejecting the argument that a manufacturer-distributor relationship implicitly creates a "confidential" or "fiduciary" relationship).   And in the abstract, one could view JAC as simply a manufacturer of passenger vehicles and PHC as the anticipated distributor of those vehicles, in accordance with the parties' Framework Agreement.  However, the customized relationship existing between PHC and JAC can also arguably be viewed as one that is not necessarily a traditional, run-of-the-mill manufacturer-distributor relationship for which no fiduciary duties could ever arise.

PHC has alleged that it first took the reins of the business venture by providing JAC with extensive market intelligence and provided a product development plan for vehicles that would satisfy both the safety and emissions standards of the United States.  Some of this conduct included extra-contractual tasks unrelated to the parties' Framework Agreement, including the retention and payment of an engine design firm, which identified, designed, and engineered various improvements for JAC.  This endeavor required PHC to invest significant amounts of

---

Ashes, Inc., No. 1:05-CV-60-M, 2007 WL 1035144 (W.D. Ky. Mar. 29, 2007).  See Def. Br. at 6.

money, time, and resources to ensure that a compliant product was manufactured.  That plan was than provided to JAC to manufacture passenger vehicles in accordance with the strictures laid out by PHC.  PHC placed its trust and confidence in JAC to abide by that plan and construct vehicles that could then be distributed throughout the United States.

PHC has also sufficiently alleged that, by providing the development plan, JAC was placed in a position of superiority, because PHC was required to act first by investing money in research and design development required to homologize JAC's vehicles, as well as providing that information to JAC.  By alleging a combination of services that not every distributor performs, PHC articulates a relationship that may be arguably different from the standard vendor-vendee relationship that exists between a manufacturer and its distributor.  Therefore, for purposes of a motion to dismiss, PHC has sufficiently pleaded facts that a fiduciary relationship between itself and JAC was plausibly created.

Furthermore, it has been recognized that a fiduciary relationship "may be found to exist either by virtue of an express confidentiality non-use/non-disclosure agreement or, in appropriate circumstances, may be implied by law."  Goscicki v. Custom Brass & Copper Specialties, Inc., 229 F. Supp. 2d 743, 757 (E.D. Mich. 2002) (citing Aerospace Am., 738 F. Supp. at 1071).  For a relationship to be confidential, Michigan courts "require that there be an explicit, at least verbal, warning that the information disclosed is confidential and/or not to be disclosed or used without authorization."  Id. at 758.  The Goscicki court held that, for purposes of summary judgment, the plaintiff failed to establish the existence of a fiduciary relationship, because she did not allege "that she communicated to the Defendants, either orally or in writing, that the information she shared was confidential."  Id. at 757.

In this case, unlike <u>Goscicki</u>, section 16.1 of the parties' Framework Agreement expressly stated, in writing, that "[b]oth parties shall guarantee not to disclose to any other person or business entity any information in relation to any content in this Agreement or information in relation to the cooperation between both parties; except as necessary to conduct business in the ordinary course." Framework Agreement at 11. This agreement not to disclose information clearly demonstrates the confidential nature of the parties' relationship, and the factfinder could reasonably determine that the phrase "cooperation between both parties" extends to the parties' extra-contractual dealings. The Framework Agreement, therefore, plausibly gives rise to a fiduciary relationship.

Lastly, JAC's arguments rely heavily on the unpublished case <u>Sudamax Industria E Comercio De Cigaros, Ltda v. Buttes & Ashes, Inc.</u>, No. 1:05-CV-60-M, 2007 WL 1035144 (W.D. Ky. Mar. 29, 2007). However, that case is distinguishable from the present matter for two reasons. First, and most important, <u>Sudamax</u> was decided on summary judgment, as opposed to the present matter, which is only at the motion-to-dismiss stage of the proceedings and lacks a fully developed record. <u>See</u> <u>McGregor</u>, 2005 WL 1345676, at *3; <u>Ajuba Int'l, L.L.C.</u>, 871 F. Supp. 2d at 688 ("[A] claim alleging the existence and breach of fiduciary duties is generally not subject to dismissal under Rule 12(b)(6)" because "the inquiry as to whether a fiduciary relationship exists is fact-specific . . . ."). Second, although the <u>Sudamax</u> court did not mention whether a confidential relationship existed between the parties, the court did acknowledge that a fiduciary relationship might exist between a buyer and seller when there is a confidential relationship. <u>Sudamax</u>, 2007 WL 1035144, at *7. Again, in light of the parties' non-disclosure provision in the Framework Agreement, a confidential relationship plausibly existed in this case, which could give rise to a fiduciary relationship.

9

Accordingly, the Court denies JAC's motion to dismiss. [4]

## IV.  CONCLUSION

For the reasons stated above, the Court denies JAC's motion to dismiss count IV of the second amended complaint (Dkt. 43).[5]

SO ORDERED.

Dated:  January 8, 2016                          s/Mark A. Goldsmith
      Detroit, Michigan                         MARK A. GOLDSMITH
                                              United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 8, 2016.

                                            s/Karri Sandusky
                                            Case Manager

---

[4] In its reply brief, JAC raises an entirely new argument that the breach of fiduciary duty claim is based solely on contractual promises, rather than any duty arising out of a non-contractual source.  Def. Reply at 2-4 (Dkt. 53).  Because this argument was raised for the first time in JAC's reply brief, it is not properly before the Court.  Clark v. Shop24 Global, LLC, 77 F. Supp. 3d 660, 677 n.6 (S.D. Ohio 2015) ("A movant cannot raise new issues for the first time in a reply brief because consideration of such issues deprives the nonmoving party of its opportunity to address the new arguments.").  Therefore, the Court declines to address this argument.

[5] GreenTech filed a joinder of concurrence in the relief sought by JAC, arguing that, if count IV is dismissed, the Court should also dismiss count XII, which alleged that GreenTech aided and abetted in JAC's breach of fiduciary duty, because that claim is derivative of, and dependent on, count IV.  See Notice of Joinder at 2 (Dkt. 51).  Because the Court denies JAC's motion to dismiss count IV, the Court rejects GreenTech's request to also dismiss count XII.